# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**BENAI PADILLA**,

      Plaintiff,

    vs.                                 No.  07cv933 MCA/ACT

**BOARD OF COMMISSIONERS
OF BERNALILLO COUNTY and
CINDY ROMERO,**

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendant County's Motion and Memorandum in Support of Motion for Summary Judgment* [Doc. 48], filed October 9, 2008; *Defendant Cindy Romero's Motion for Summary Judgment* [Doc. 49], also filed October 9, 2008; *Defendants' Motion and Memorandum in Support of Defendants' Motion to Strike "Plaintiff's Notice of Additional Material Fact"* [Doc. 70], filed March 10, 2009; and *Plaintiff's Motion for Leave to File Additional Affidavits* [Doc. 81], filed December 21, 2009. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court (1) grants the County's motion for summary judgment with respect to Count I of the *Complaint* and declines to exercise supplemental jurisdiction over Counts II and III; (2) grants Cindy Romero's motion for summary judgment with respect to Count I of the *Complaint* and declines to exercise supplemental jurisdiction over Counts II and III; (3) grants the motion to strike the notice of additional material fact; and

(4) denies the motion for leave to file additional affidavits.

## I. BACKGROUND

The facts relevant to the disposition of these motions have already been fully set out in a *Memorandum Opinion and Order* of June 2, 2009, in which this Court granted in part and denied in part *Defendants' Motion to Strike Plaintiff Benai Padilla's Affidavit [Docket No. 52-5]*. [See Doc. 74].  Accordingly, the facts will be repeated here only as necessary.

At all times relevant to this action, Plaintiff Benai Padilla was a student at the University of New Mexico.  While in college (and also while she was in high school), Ms. Padilla worked as a student intern for Sandia National Laboratories ("Sandia"), contracting through Compa Industries ("Compa"). [Doc. 52; Exh. D, Padilla depo. at 26; Doc. 49; Exh. E, Padilla depo. at 23].  Ms. Padilla left Sandia to participate in a study-abroad program in Spain. [Doc. 52;  Exh. D, Padilla depo. at 28].  Upon her return from Europe in 2005, Ms. Padilla had hoped to go back to her job at Sandia, but that position was filled so she accepted employment directly with Compa as an executive administrative assistant. [Doc. 49; Exh. E, Padilla depo. at 25, 28].  Through her deposition, Ms. Padilla testified that in October or November of 2006, she left Compa because the security clearance for which she had applied "never came back." [Id.; Exh. E, Padilla depo. at 28].  Ms. Padilla testified that she was never told that she had been denied a clearance, nor were the results of her background check shared with her.  Ms. Padilla estimated that approximately three or four months passed between the time she applied for the security clearance and the time she left Compa. [Id.; Exh. E, Padilla depo. at 29-30].  According to Ms. Padilla, she was not asked to leave

2

Compa; instead, she chose to leave and the only reason for her decision was that her security clearance was never returned. [Id.; Exh. E, Padilla depo. at 31].

Ms. Padilla last held a full-time job in 2007, when she was employed as a real estate assistant at Berger Briggs, an Albuquerque real estate and insurance firm. That job ended in October 2007, when Ms. Padilla was informed that "the position was no longer needed." [See Doc. 49; Exh. E, Padilla depo. at 95]. Although Ms. Padilla estimates that she must have applied for "like 40 or 50" jobs since late 2007, she has not contacted the personnel offices from any of these jobs for which she has unsuccessfully applied, and so does not know the reason or reasons for her non-selection. [See id.; Exh. E, Padilla depo. at 95, 101].

On November 13, 2004, Ms. Padilla was arrested and charged with disorderly conduct as a result of her involvement in an altercation that took place outside a bar in downtown Albuquerque. [See Doc. 49; Exh. E, Padilla depo. at 70-74 and attached 2004 Offender Booking Sheet]. On February 16, 2007, defendant Cindy Romero (who at all times relevant to this matter was employed by Defendant Bernalillo County ("the County") as a corrections technician at the Metropolitan Detention Center ("the MDC")) altered Ms. Padilla's computerized MDC offender booking sheet to add a charge of prostitution. [See id. at 7; Exh. E, attached 2007 Offender Booking Sheet]. In truth, Ms. Padilla has never been arrested for prostitution. [Id.; Exh. E, Padilla depo. at 41]. However, Ms. Padilla has a connection to Ms. Romero in that Ms. Padilla is married to Joseph Alderete, a non-party to this action, with whom Ms. Romero had previously been romantically involved.

In light of Ms. Romero's actions with respect to the false charge of prostitution, Ms. Padilla, on September 19, 2007, filed a three-count *Complaint for Due Process Violations, Defamation of Character and Tort Claims* against Ms. Romero and the Board of Commissioners of Bernalillo County. [Doc. 1]. In her *Complaint*, Ms. Padilla alleges that (1) Ms. Romero violated her Fourteenth Amendment Due Process rights by "wrongfully alter[ing Ms. Padilla's] criminal history, so that the official records of Bernalillo County reflected that [she] had a criminal arrest record without [her] having any opportunity to respond[,]" and that the County is responsible for Ms. Romero's actions (Count I); (2) Ms. Romero defamed Ms. Padilla and the County is liable under the theory of *respondeat superior* (Count II) and (3) the County negligently hired, supervised, retained, and managed Ms. Romero (Count III). [See generally id.].

Ms. Romero and the County have filed separate motions for summary judgment. [See Docs. 48, 49]. Ms. Romero does not dispute that she altered Ms. Padilla's booking sheet, or that the false charge of prostitution has impugned Ms. Padilla's reputation. To be sure, Ms. Romero freely concedes the alteration, explaining in her "Statement of the Facts" that

> [o]n February 16, 2007, over two (2) years after Benai Padilla had been arrested and booked on the disorderly conduct charge, Cindy Romero altered certain BCMDC booking information related to that arrest. Ms. Romero added a prostitution charge to Benai Padilla's computerized booking sheet. Ms. Romero printed the altered booking sheet.

[Doc. 49 at 7]. Ms. Romero also admits that, when she altered the booking sheet, she was acting within the course and scope of her duties as an MDC corrections technician, and under

4

color of state law. [Id. at 4]. She argues, however, that Ms. Romero's claims fail as a matter of law because they are insufficient to state a due process violation. [See id. at 14-19]. For its part, the County asserts that Ms. Padilla has failed to demonstrate municipal liability, and also has failed to set forth a viable state claim. [See generally Doc. 48].

Approximately six weeks after Ms. Romero and the County filed their summary-judgment motions, and two weeks after Ms. Padilla filed her responses, Defendants filed a motion to strike the affidavit that was attached to Ms. Padilla's response to Ms. Romero's motion for summary judgment. [See Docs. 52, 53, 56]. As is relevant here, Ms. Romero and the County sought to strike paragraphs 6 through 9 of the affidavit, on grounds including that the statements therein were not based on personal knowledge but, instead, each of those paragraphs recounted what Ms. Padilla had learned from Summer Bethforce, a Special Investigator for the United States Government, about what role the false prostitution charge would play if in the future Ms. Padilla were to seek another security clearance. [Doc. 56 at 3-4]. In response, Ms. Padilla asked that, rather than strike paragraphs 6 through 9 outright, the Court grant her leave "to supplement her affidavit with an affidavit signed and executed by Summer Bethforce. . . ." [Doc. 65 at 6].

This Court determined that, in light of the unique circumstances presented, it would be fundamentally unfair not to allow Ms. Padilla to supplement her affidavit with an affidavit signed and executed by Summer Bethforce, and that "the harm to Ms. Padilla in preventing her from supplementing her pleadings with an affidavit signed and executed by Ms. Bethforce far outweigh[ed] the harm to Ms. Romero in permitting the affidavit. . . ." [Doc.

5

74 at 18].   Accordingly, the Court afforded Ms. Padilla the narrow relief sought, and specifically "directed [her] to supplement the pleadings with a signed and executed affidavit from Summer Bethforce, Special Investigator for the United States Government. . . ." [Id. at 21].   At the parties' joint request, the Court extended the deadline for the filing of Ms. Bethforce's  affidavit from June 16, 2009 until September 16, 2009. [See Docs. 75, 76].

September, October, November, and the first week of December 2009 passed without the filing of Ms. Bethforce's affidavit.   Consequently, the Court set the matter for a December 8, 2009 telephonic status conference. [See Doc. 79].   As a result of what counsel for Ms. Padilla represented at the status conference, namely, that he had been unable to obtain Ms. Bethforce's affidavit but was able to secure affidavits from other individuals, the Court directed counsel to file a motion seeking leave to file additional affidavits from these other individuals, with the signed affidavits attached as exhibits. [See Doc. 80].

On December 21, 2009, counsel for Ms. Padilla filed *Plaintiff's Motion for Leave to File Additional Affidavits* [Doc. 81].   Attached to the motion as Exhibit A is the affidavit of John Menicucci, an owner of, and Ms. Padilla's employer at, Berger Briggs, the Albuquerque real estate and insurance firm where Ms. Padilla worked in October 2007.  [Id.; Exh. A].   Mr. Menicucci's affidavit is offered to assist Ms. Padilla in coming forward with facts sufficient to state a viable due process claim and, thus, survive Defendants' motions for summary judgment. [See Doc. 81 at 2-4].   Defendants oppose Ms. Padilla's motion, arguing that her attempt to supplement her pleadings with Mr. Menicucci's affidavit is both untimely and futile. [Doc. 82 at 1].

6

## II. ANALYSIS

**A.**     ***Plaintiff's Motion for Leave to File Additional Affidavits* [Doc. 81]**

Affidavits must be made upon personal knowledge, and "statements prefaced by the phrases, 'I believe' or 'upon information and belief' or those made upon an 'understanding' . . . are properly subject to a motion to strike. <u>Carey v. Beans</u>, 500 F.Supp. 580, 583 (E.D.Pa. 1980).  Paragraphs 6 through 9 of Ms. Padilla's affidavit suffer from this defect inasmuch as each of these paragraphs is prefaced with either "I have been informed by Summer Bethforce," or "Ms. Bethforce has informed me." [<u>See</u> Doc. 52; Exh. E; Padilla affidavit at ¶¶ 6-9 (explaining that Ms. Bethforce "has informed" Ms. Padilla that a prostitution charge, even if ultimately shown to be false, will always appear during background investigations conducted on Ms. Padilla)].

Still, pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, a "district court clearly has discretion to permit supplemental affidavits it finds useful for summary judgment determination."  <u>Lighton v. Univ. of Utah</u>, 209 F.3d 1213, 1227 (10th Cir. 2000); <u>see also</u> Fed.R.Civ.P. 56(e) ("The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.").  As explained in its *Memorandum Opinion and Order* of June 2, 2009, this Court believed that an affidavit executed and signed by Summer Bethforce would have been useful for its summary-judgment determination, particularly inasmuch as it was anticipated that Ms. Bethforce was going to provide information that would have helped Ms. Padilla satisfy one of the elements of her due process claim, *i.e.*, that Ms. Romero's actions had placed a tangible burden on Ms.

7

Padilla's employment prospects.  As the Court explained,

> Ms. Padilla seeks to establish that Ms. Romero's actions did more than just damage her reputation (which, in and of itself, would not amount to a constitutional violation) inasmuch as she seeks to show that Ms. Romero's actions have placed a tangible burden on her employment prospects.  Without the information that Ms. Bethforce purportedly is able to provide, Ms. Padilla is unable to satisfy the elements of her claim.

[Doc. 74 at 19].

The affidavit of John Menicucci that Ms. Padilla has now provided, however, does not demonstrate what an affidavit from Ms. Bethforce was expected to establish—that "if a prostitution charge was ever put on [Ms. Padilla's] record, no matter if it was expunged, taken off or later proven to be false, the federal government [would] **always** be able to see it, i.e. it [would be a part of [Ms. Padilla's] permanent record forever[,]" and that "any time [Ms. Padilla were to] switch agencies, or whenever [she] was up for a new clearance or anything of that nature, [she would] always have to explain to an investigator what happened with respect to the false prostitution charge." [Doc. 52; Exh. E, Padilla affidavit at 1, 2 (emphasis in original)].  Instead, Mr. Menicucci's affidavit tends to show only that, when Ms. Padilla began to prosecute the instant lawsuit, she became so preoccupied with matters other than her work duties that he was forced to terminate her employment. [Doc. 81; Exh. A at 2].  According to Mr. Menicucci, however, matters involving the false prostitution charge and the related lawsuit were not the sum of Ms. Padilla's distractions.  Mr. Menicucci explains that Ms. Padilla also was preoccupied with her wedding.

Furthermore, there is no indication that Mr. Menicucci believed that there was any veracity in the prosecution charge. To the contrary, he states that "[i]n approximately August, 2007, [he] became aware that [Ms. Padilla] had been accused of being a prostitute, a charge which [she] explained to [him] to be false." [Id.; Exh. A at 1]. At best, Mr. Menicucci's affidavit establishes that Ms. Padilla lost her job with Berger and Briggs because she devoted too many work hours to pursuing, among other things, matters that were secondary to the actual false charge of prostitution, *i.e.*, her lawsuit, not because Mr. Menicucci truly believed that Ms. Padilla had ever engaged in prostitution. Unlike the expected affidavit of Summer Bethforce, the Court finds that the affidavit of Mr. Menicucci is not likely to be of assistance to the summary-judgment determinations. See Lighton, 209 F.3d at 1227 (pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, a "district court clearly has discretion to permit supplemental affidavits it finds useful for summary judgment determination"). Accordingly, Ms. Padilla's motion for leave to file additional affidavits will be denied.

**B.** ***Defendant Cindy Romero's Motion for Summary Judgment* [Doc. 49]**

Cindy Romero and the County have filed separate motions for summary judgment. In her motion, Ms. Romero asserts, *inter alia*, that the Court should enter summary judgment in her favor because she is entitled to qualified immunity with respect to Ms. Padilla's due process allegations. According to Ms. Romero, Ms. Padilla's claims for violations of her liberty and property interests must fail because those claims "rest on alleged harm to [Ms. Padilla's] reputation [and] it is well established that reputation alone is not an interest

protected by the Constitution." [Doc. 49 at 14].   For its part, the County contends that Ms. Padilla has failed to establish municipal liability because she has not shown that Ms. Romero committed a constitutional violation and that a County policy or custom was the moving force behind the alleged constitutional deprivation. [Doc. 48 at 6].

### 1. Standard of Review

#### a. Summary Judgment

Summary judgment under Fed.R.Civ.P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   Fed.R.Civ.P. 56(c).   "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed.R.Civ.P. 56(e).   Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial."   Id.   Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.   See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial).   See Celotex, 477 U.S. at 324. It is not the Court's role, however, to weigh the evidence, assess the credibility of witnesses,

or make factual findings in ruling on a motion for summary judgment.  Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

## 2. 42 U.S.C. § 1983 and the Defense of Qualified Immunity

Ms. Padilla brings her action pursuant to 42 U.S.C. § 1983.  Section 1983 of Title 42 of the United States Code provides, in relevant part, that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Section 1983 is not an independent source of substantive rights; rather it is a mechanism for enforcing federal rights conferred elsewhere, see Albright v. Oliver, 510 U.S. 269, 271 (1994), and provides a remedy "for any person who has been deprived of rights secured by the Constitution or laws of the United States by a person acting under color of law." Curley v. Klem, 298 F.3d 271, 277 (3rd Cir.2002).  Accordingly, an analysis of a plaintiff's federal civil-rights claim necessarily begins by identifying the specific constitutional right or rights allegedly infringed.  Graham v. Connor, 490 U.S. 386, 393-94 (1989).

In this case, Ms. Padilla contends that she was deprived of a liberty interest—and her Fourteenth Amendment right to procedural due process was violated—as a result of Ms. Romero using her official position as a County employee, acting within the course and scope of her employment, to alter Ms. Padilla's criminal history so as to reflect in official County records a prostitution charge that did not actually exist, and to which Ms. Padilla was afforded no opportunity to respond. [See Doc. 1 at 4].  More specifically, Ms. Padilla asserts that Ms. Romero's actions have placed a tangible burden on her employment prospects because the false prostitution charge (1) renders Ms. Padilla "virtually blacklisted in terms of any and all future government employment[;]" (2) "will be discovered by any government employer checking into [her] background[;]" and (3) will be disclosed to future potential employers to whom Ms. Padilla expects to apply "for government positions that require security clearance[.]" [Doc. 52 at 11, 13].  As explained, Ms. Romero has moved for summary judgment on the ground of qualified immunity.  [See Doc. 49 at 11-19].

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff, who must first establish that the defendant violated a constitutional right.  Cortez v. McCauley, 478 F.3d 1108, 1114 (10th Cir. 2007) (citing Reynolds v. Powell, 370 F.3d 1028, 1030 (10th Cir.2004)).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier v. Katz, 533 U.S. 194, 201 (2001).  If, however, a violation has been shown, the next step in the qualified- immunity sequence is to ask whether the constitutional right was clearly established when the alleged conduct occurred.  See Cortez, 478 F.3d at

1114.  "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." <u>Saucier</u>, 533 U.S. at 201.  Indeed, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted."  <u>Id.</u> at 202.  This is not to say, however, that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful.  Rather, it is to say that the unlawfulness must be apparent in light of pre-existing law.  <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002).  While courts are no longer required to follow <u>Saucier</u>'s two-step protocol in sequence, the United States Supreme Court "continue[s] to recognize that it is often beneficial[]" to do so.  <u>Pearson v. Callahan</u>, 129 S.Ct. 808, 818 (2009); <u>see also</u> <u>Poolaw v. Marcantel</u>, 565 F.3d 721, 728 n. 5 (10th Cir. 2009) (explaining that, in <u>Pearson</u>, the Supreme Court made <u>Saucier</u>'s "order of battle" discretionary).

For a right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must be as the plaintiff maintains.  <u>Farmer v. Perrill</u>, 288 F.3d 1254, 1259 (10th Cir. 2002).  An official can still be on notice that her conduct violates established law even in novel factual circumstances; the "salient question" is whether the state of the law at the relevant time gave her fair warning that the conduct at issue was unconstitutional.  <u>See</u> <u>Hope</u>, 536 U.S. at 741.  By contrast, summary judgment based on qualified immunity is appropriate if the law did not put the defendant on notice that her conduct was clearly unlawful.  <u>Saucier</u>, 533 U.S. at 202.  If, however, the plaintiff successfully establishes both a violation of a constitutional right and

13

that the right was clearly established at the time of the alleged conduct, the burden shifts to the defendant, who must prove that there are no genuine issues of material fact and that the defendant is entitled to judgment as a matter of law. Olsen v. Layton Hills Mall, 312 F.3d 1304, 1312 (10th Cir.2002). "In the end, therefore, the defendant still bears the normal summary judgment burden of showing that no material facts remain in dispute that would defeat the qualified immunity defense." Id.

The Fourteenth Amendment to the United States Constitution "forbids the State from depriving an individual of life, liberty, or property without due process of law." Couture v. Bd. of Educ. of Albuquerque Pub. Schs., 535 F.3d 1243, 1256 (10th Cir. 2008). While liberty interests may not lend themselves to precise definition, categorization, or characterization, "it is clear . . . that '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.'" Jensen v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1558 (10th Cir. 1993) (quoting Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971)). Still, injury to one's reputation—without more—is insufficient to amount to a liberty-interest deprivation. Lancaster v. Indep. Sch. Dist. No. 5, 149 F.3d 1228, 1235 (10th Cir. 1998) (citing Paul v. Davis, 424 U.S. 693, (1976) (notwithstanding "the frequently drastic effect of the 'stigma' which may result from defamation by the government" reputation alone is neither "liberty" nor "property" sufficient by itself to invoke Due Process Clause's procedural protections). Instead, a plaintiff asserting that the government has violated the Fourteenth Amendment by impugning her good name or reputation must satisfy

14

what has become known as the "stigma plus" standard."  Gwinn v. Awmiller, 354 F.3d 1211, 1216 (10th Cir. 2004).

The "stigma plus" standard demands that a plaintiff demonstrate that (1) the government made a statement about her that is sufficiently derogatory to injure her reputation; (2) the statement is capable of being proved false; (3) the plaintiff has asserted that the statement is false; and (4) the plaintiff has experienced some governmentally imposed burden that has significantly altered her status as a matter of state law.  Gwinn, 354 F.3d at 1216.  In the instant case, there is no dispute that Ms. Padilla has satisfied elements (1), (2), and (3). [See Doc. 49 at 14 ("For purposes of this motion, Ms. Romero concedes that her false statements impugned Ms. Padilla's reputation.").   The issue is whether Ms. Romero's actions have resulted in "some governmentally imposed burden that has significantly altered [Ms. Padilla's] status as a matter of state law."  Gwinn, 354 F.3d at 1216.

It is well-established that a plaintiff does not experience a "governmentally imposed burden that . . . significantly alter[s] her status" unless her rights or status are removed or appreciably changed in some way.  Gwinn, 354 F.3d at 1216.  It is equally well-established that "damage to 'prospective employment opportunities' is too intangible to constitute a deprivation of a liberty or property interest."  Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1269 (10th Cir. 1989) (quoting Setliff v. Mem'l Hosp. of Sheridan County, 850 F.2d 1384, 1397 n. 18 (10th Cir.1988).  For this reason, the Tenth Circuit, in Phelps, concluded that the plaintiff/attorney did not demonstrate a prima facie case of a violation of a liberty

15

interest under 42 U.S.C. § 1983 where he alleged neither a present harm to established business relationships nor that he had been foreclosed from practicing law, but, instead, only that the defendant's actions had "placed a defamatory cloud over his employment opportunities" and made him less attractive to potential clients.  Phelps, 886 F.2d at 1268, 1269.

Cases arising in other contexts also illustrate the connection that a plaintiff must make between the government stigmatization and the asserted significant alteration in status.  For example, in both Gwinn v. Awmiller and Chambers v. Colorado Dept. of Corrections, the Tenth Circuit held that the Fourteenth Amendment liberty interests of inmates in a Sex Offender Treatment Program ("SOTP") were implicated by prison officials' classification of them as sex offenders, when that classification was *combined with* the loss of a previously granted opportunity to earn good-time credits at a higher, pre-classification level.  See Gwinn, 354 F.3d at 1217-19; Chambers v. Colorado Dept. of Corr., 205 F.3d 1237, 1242-44 (10th Cir. 2000).

Gwinn and Chambers were informed by the Ninth Circuit case of Neal v. Shimoda, which involved a similar in-prison SOTP that the Ninth Circuit concluded worked a violation of inmates' liberty interest, as protected by the Fourteenth Amendment. The Hawaii statute that created the SOTP in Neal "authorize[d] correctional officials to classify certain inmates as sex offenders without a hearing and *mandate[d] their completion of an extensive treatment program . . . as a precondition to parole eligibility*."  Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir. 1997) (emphasis added). The liberty interest, explained the circuit, was created as

16

a result of the "stigmatizing consequences of the attachment of the 'sex offender' label *coupled with* the subjection of the targeted inmate to a mandatory treatment program whose successful completion [was] a precondition for parole eligibility. . . ." Id. at 830 (emphasis added).   Emphasizing that it could "hardly conceive of a state's action bearing more 'stigmatizing consequences' than the labeling of a prison inmate as a sex offender[,]" the circuit concluded that it was the stigmatization *plus* the successful completion of the SOTP as a precondition for parole eligibility that created the sort of liberty-interest deprivation requiring procedural protections.   Id.

In the instant case, Ms. Padilla, has failed to demonstrate the "plus" component of the "stigma plus" standard.   While it is undisputed that Ms. Romero has impugned Ms. Padilla's reputation, there simply has been no evidence presented from which the Court is able to determine that a governmentally imposed burden has significantly altered Ms. Padilla's status as a matter of law.   See Gwinn, 354 F.3d at 1216.   Moreover, even if Ms. Padilla had been able to secure an affidavit executed by Summer Bethforce stating what Ms. Padilla had anticipated—that even if removed, expunged or later proved false, the federal government will always be able to see that Ms. Padilla was charged with prostitution—Ms. Padilla would have demonstrated only that she may appear less attractive to potential future employers and that a "defamatory cloud" may hang over future employment opportunities.   See Phelps, 886 F.2d at 1268, 1269.   To be sure, Ms. Padilla has never represented that Ms. Bethforce could swear that the false charge of prostitution would forever foreclose future employment opportunities with the federal government or prevent Ms. Padilla from ever obtaining a

security clearance.  Instead, she had expected that Ms. Bethforce would state that, should Ms. Padilla again apply for a security clearance, she would be required to "explain to an investigator what happened with respect to the false prostitution charge." [Doc. 52; Exh. E, Padilla affidavit at 2].  The fact that Summer Bethforce "had to write up a statement to include with her investigation stating what happened with respect to the prostitution charge, and that she needed case numbers to show proof that Cindy Romero put this charge on [Ms. Padilla's] record and that [Ms. Padilla] was not in fact arrested for prostitution" serves as an indication that, while Ms. Padilla may now be asked to clear additional hurdles that another applicant need not overcome, she has not been absolutely foreclosed from employment with the federal government as a result of the false prostitution charge.

Because Ms. Padilla has not demonstrated the violation of a constitutional right, Ms. Romero is entitled to qualified immunity.  On that basis, the Court will grant Ms. Romero's motion for summary judgment as to Count I.

**C.**      ***Defendant County's Motion and Memorandum in Support of Motion for Summary Judgment* [Doc. 48]**

The County also has moved for summary judgment, contending that Ms. Padilla cannot establish municipal liability because she cannot show that Ms. Romero committed a constitutional violation or that the County acted in a manner somehow deliberately indifferent to her rights. [See Doc. 48 at 6-11].  Ms. Padilla responds that the County's training of Ms. Romero was so wholly inadequate as to rise to the requisite level of deliberate indifference. [See Doc. 53 at 9-12].

While municipalities can be sued for monetary, declaratory, or injunctive relief for deprivations of constitutional or civil rights, a municipality will not be held liable for the actions of its employees under a theory of *respondeat superior*.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-691 (1978).  Instead, "[t]o succeed in a § 1983 claim against a municipality, a plaintiff must show two elements: '(1) a municipal employee committed a constitutional violation, and (2) a municipal policy or custom was the moving force behind the constitutional deprivation.'" Cordova v. Aragon, 569 F.3d 1183, 1193 (10th Cir. 2009) (*quoting* Walker v. City of Orem, 451 F.3d 1139, 1152 (10th Cir. 2006)).

When an official county policy itself violates federal law, "issues of culpability and causation are straightforward; simply proving the existence of the unlawful policy puts an end to the question." Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir.1998).  Proving the existence of such an official county policy also is relatively straightforward when that policy is expressly established by the county's authorized decisionmaker, *i.e.*, the person "responsible for establishing final policy [for the county] with respect to the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986).  "If the decision to adopt [a] particular course of action is properly made by [the] government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood." Id. at 481; see Lopez v. Lemaster, 172 F.3d 756, 763-64 (10th Cir. 1999).  A county also may be liable for constitutional deprivations "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Monell, 436 U.S. at 691; see also Pembaur,

475 U.S. at 481-82 n.10 (holding that the custom may be established by proof of knowledge and acquiescence).

Finally, a county's liability also can be established through a theory of inadequate training or supervision.  To prevail on such a theory, however, a plaintiff must show that the failure to train or supervise amounts to "'deliberate indifference.'"  Olsen, 312 F.3d at 1318 (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)).  Such deliberate indifference may be shown "'when the municipality has actual or constructive notice that its action or failure is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm.'"  Id. (quoting Barney, 143 F.3d at 1307).

The Court's determination that Ms. Romero committed no constitutional violation forecloses a finding of municipal liability.  See Myers v. Oklahoma County Bd. of County Comm'rs, 151 F.3d 1313, 1316 (10th Cir. 1998) ("It is well established . . . that a municipality cannot be held liable under section 1983 for the acts of an employee if [it is found] that the municipal employee committed no constitutional violation.").  Moreover, "[a] claim of inadequate training, supervision, and policies under § 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation by the person supervised."  Webber v. Mefford, 43 F.3d 1340, 1344-45 (10th Cir. 1994).

In the alternative, there simply is no evidence here to demonstrate the County's deliberate indifference to Ms. Padilla's rights.  "Deliberate indifference means more than simple or even heightened negligence."  Estate of Smith v. Silvas, 414 F.Supp.2d 1015, 1018 (D.Colo. 2006).  It requires "an act or omission purposefully committed by a person who

must have realized that the conduct was unnecessarily dangerous or which conduct was done heedlessly or recklessly, without regard to the consequences, or without regard to the rights and safety of others." Zuchel v. City and County of Denver, Colo., 997 F.2d 730, 735 (10th Cir. 1993). As for the element of causation, "[t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 404 (1997). "Clearly these burdens are very difficult to meet, but this is intentionally so, lest the law devolve into '*de facto respondeat superior* liability.'" Estate of Smith, 414 F.Supp.2d at 1019 (*quoting* City of Canton, 489 U.S. at 392); see also Bd. of County Comm'rs of Bryan County, Okl, 520 U.S. at 403 ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*.").

Notwithstanding Ms. Padilla's assertions that, *inter alia*, the County failed to investigate Ms. Romero's background before hiring her and subsequently "failed to train on a specific area—records manipulation[,]" [Doc. 53 at 10], the uncontroverted evidence shows, among other things, that Ms. Romero's immediate supervisor, Heather Gouch: (1) knew Ms. Romero to be a knowledgeable and independent hard worker from previous personal experience working with and managing Ms. Romero when both women were employed by the City of Albuquerque; (2) checked Ms. Romero's employment references before rehiring Ms. Romero to work for the County; (3) trained all corrections technicians not to update or modify records "until they [had] a court document in front of them[;]" (4) trained all corrections technicians that only "verified information from police activity or

21

court activity" was to be entered into the County's computer system; (5) began an investigation of the false prostitution charge once she was informed of its existence (which occurred as she was investigating another disciplinary matter concerning Ms. Romero); (6) advised her chief of the false charge; and (7) consequently recommended Ms. Romero's termination. [Doc. 48; Exh. A, Gouch depo. at 13, 17-22, 63-64, 82].  As a result of Ms. Gouch's investigation, Ms. Romero was in fact terminated. [Id. at 4, ¶ 14 ("Ms. Gouch's investigation eventually resulted in the termination of Ms. Romero's employment.").

The Tenth Circuit has explained that

> [t]he deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.

Carr v. Castle, 337 F.3d 1221, 1229 (10th Cir. 2003).  It bears repeating that a finding of deliberate indifference requires "a showing that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the City can reasonably be said to have been deliberately indifferent to the need[.]'"  Brown, 227 F.3d at 1288 (quoting City of Canton, 489 U.S. at 390.

Ms. Padilla's summary-judgment evidence does not meet this standard. To the contrary, the undisputed evidence reveals that Ms. Romero was trained not to enter information into the County's computer system unless that data came from court documentation or was "based on verified information from police activity or court activity." [Doc. 48; Exh. A at 13, 82]. Moreover, when Ms. Gouch was informed that Ms. Romero had acted in violation of her training, Ms. Gouch began an investigation that ultimately led to Ms. Romero's termination. For these reasons, the Court concludes that Ms. Padilla has not shown that the County acted in deliberate indifference to her rights.

**D.    Counts II and III: Defamation and Negligent Hiring, Supervision, Retention, and Management (State-Law Claims)**

In Count II of her *Complaint*, Ms. Padilla charges that Ms. Romero is liable for having published defamatory communications concerning her, and that the County also is liable for this defamation pursuant to a theory of *respondeat superior*. In Count III, Ms. Padilla asserts that the County negligently hired, supervised, retained, and managed Ms. Romero. [Doc. 1 at 6-8]. In asserting these claims, Ms. Padilla invokes the Court's supplemental jurisdiction. [See id. at 2 ("This action arises under the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, the New Mexico Tort Claims Act, NMSA 1978 § 41-4-1 *et seq.* and the laws of the state of New Mexico.").

Section 1367 of Title 28 of the United States Code provides, in pertinent part, that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action

23

within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a).  Pursuant to subsection (c), however, the Court may decline to exercise its supplemental jurisdiction if, among other things, it has dismissed all claims over which it had original jurisdiction.  28 U.S.C. § 1367(c)(3).  In other words, once "the bases for federal subject matter jurisdiction have been extinguished[,] the district court may decline to exercise continuing 'pendent or supplemental jurisdiction over [the] plaintiff's state claims." Lancaster, 149 F.3d at 1236 (dismissing without prejudice plaintiff's claims for, *inter alia*, breach of contract after having entered summary for defendant on plaintiff's First and Fourteenth Amendment claims); see also Taylor v. Meacham, 82 F.3d 1556, 1564 n.1 (10th Cir. 1996) ("Once a federal court dismisses claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over related state law claims.").

In the instant action, the entry of summary judgment in favor of Ms. Padilla and the County on Count I of the *Complaint* extinguishes the basis for federal subject matter jurisdiction.  See Lancaster, 149 F.3d at 1236.  Accordingly, the Court declines to exercise its supplemental jurisdiction over the claims that arise under state law.  See 28 U.S.C. § 1367(c)(3).  In so declining, the Court has considered whether the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction.  See Anglemyer v. Hamilton County Hosp., 58 F.3d 533, 541 (10th Cir. 1995).  The Court is not convinced that these factors weigh in favor of retaining jurisdiction.  The municipal liability and municipal-employee issues that are at the heart of

Ms. Padilla's defamation and negligence claims are subject to evaluation under state law and, thus, best suited to adjudication in a state court. Notions of comity and federalism demand that a state court try such claims in the first instance, absent compelling reasons to the contrary. See Thatcher Enters. v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir. 1990). In addition, the Court's decision not to exercise supplemental jurisdiction is not necessarily fatal to Ms. Padilla's state-law claims, as 28 U.S.C. § 1367(d) may provide for the tolling of any limitations period regarding these claims. For these reasons, Counts II and II of Ms. Padilla's *Complaint* will be dismissed without prejudice. See Lancaster, 149 F.3d at 1236 (where district court had entered summary judgment for defendant on plaintiff's federal claims, affirming district court's decision to dismiss without prejudice plaintiff's state-law claims).

**E.**   ***Defendants' Motion and Memorandum in Support of Defendants' Motion to Strike "Plaintiff's Notice of Additional Material Fact"* [Doc. 70]**

On March 4, 2009, Ms. Padilla filed *Plaintiff's Notice of Additional Material Fact* [Doc. 69]. In that *Notice*, Ms. Padilla asked the Court to consider, in assessing Ms. Romero's summary-judgment motion, that on February 16, 2009, a state grand jury returned a three-count indictment charging Ms. Romero with tampering with public records. A copy of the indictment is attached to the *Notice* which, for a variety of reasons, Ms. Romero now moves to strike. [Id.; Exh. A; see also Doc. 70].

The Local Rules of this district provide for a motion, response, and reply. Unless extended by agreement of all parties (or by the Court), a response must be served and filed

within fourteen (14) days after service of the motion, and a reply must be served and filed within fourteen (14) days after service of the response.   D.N.M.LR-Civ. 7.4 (a).   Upon completion of briefing, the matter is ready for decision.   Id.   Consequently, the filing of a surreply requires leave of the Court.   D.N.M.LR-Civ. 7.4(b).

In this case, on December 1, 2008, Ms. Romero filed a notice of completion of briefing with respect to her summary-judgment motion. [See Doc. 61].   It was not until more than three months later, on March 4, 2009, that Ms. Padilla filed *Plaintiff's Notice of Additional Material Fact*. [See Doc. 69].   The Court construes Ms. Padilla's *Notice* as a surreply, for which she failed to seek leave to file.   Accordingly, the Court will grant Ms. Romero's motion to strike the *Notice*.   See Beaird v. Seagate Technology, Inc., 145 F.3d 1159, 1164 (10th Cir. 1998) (whether to allow or disallow surreply is matter withing district court's discretion).

## III. CONCLUSION

On the basis of the foregoing, the Court will grant the County's and Ms. Romero's motions for summary judgment with respect to Count I of Ms. Padilla's *Complaint*, and decline to exercise supplemental jurisdiction over Counts II and III.   The Court also will grant Ms. Romero's motion to strike Ms. Padilla's the notice of additional material fact. Finally, the Court will deny Ms. Padilla's motion for leave to file additional affidavits.

**IT IS, THEREFORE, ORDERED** that *Defendant County's Motion and Memorandum in Support of Motion for Summary Judgment* [Doc. 48] is **GRANTED** as to Count I of the *Complaint*;

26

**IT IS FURTHER ORDERED** that *Defendant Cindy Romero's Motion for Summary Judgment* [Doc. 49] is **GRANTED** as to Count I of the *Complaint*;

**IT IS FURTHER ORDERED** that Count II of the *Complaint* (Defamation) is **DISMISSED WITHOUT PREJUDICE**;

**IT IS FURTHER ORDERED** Count III of the Complaint (Negligent Hiring, Supervision, Retention, and Management) is **DISMISSED WITHOUT PREJUDICE**;

**IT IS FURTHER ORDERED** that *Defendants' Motion and Memorandum in Support of Defendants' Motion to Strike "Plaintiff's Notice of Additional Material Fact"* [Doc. 70] is **GRANTED**;

**IT IS FURTHER ORDERED** that *Plaintiff's Motion for Leave to File Additional Affidavits* [Doc. 81]  is **DENIED**;

**IT IS FURTHER ORDERED** that the **CALL OF THE CALENDAR** set for THURSDAY, March 4, 2010, at 9:00 a.m., and the **JURY SELECTION/TRIAL** set for MONDAY, March 8, 2010, at 9:00 a.m. are hereby **VACATED**.

**SO ORDERED** this 8th day of February, 2010, in Albuquerque, New Mexico.


**M. CHRISTINA ARMIJO**
United States District Judge